## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:                                                CASE NO.: 8:16-bk-04709-CPM
                                                                            CHAPTER 7

Thomas A. Bell
aka Thomas Alvin Bell,

    Debtor,

Sallie K. Bell
aka Sallie Kate Bell,

    Joint Debtor.

_____/

16-173215

## MOTION FOR RELIEF FROM AUTOMATIC STAY

### NOTICE OF OPPORTUNITY TO
### OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within twenty one (21) days from the date set forth on the proof of service attached to this paper plus an additional three days for service.  If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed.**

**If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing.  If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

Secured Creditor, WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR

SOUNDVIEW HOME LOAN TRUST 2007-OPT3, ASSET-BACKED CERTIFICATES,

SERIES 2007-OPT3, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), THOMAS A. BELL AKA THOMAS ALVIN BELL AND SALLIE K. BELL AKA SALLIE KATE BELL, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on May 31, 2016.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. On May 17, 2007, Debtor(s) executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $270,000.00 to Foundation Financial Group. The Mortgage was recorded on June 4, 2007 in Book 07308 at Page 1772-1790 of the Public Records of Polk County, Florida. The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A." The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

4. The mortgage provides Secured Creditor a lien on the real property located in Polk County, Florida, and legally described as follows:

LOT 28 OF IMPERIALAKES, PHASE TWO, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 64, PAGE 1, OF THE PUBLIC RECORDS OF POLK COUNTY, FLORIDA

This property is located at the street address of: 167 WOOD HALL DRIVE, MULBERRY, FL 33860.

5.  The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since September 1, 2015.

6.  On May 20, 2016, Plaintiff filed a foreclosure action in the Circuit Court for the 10th Judicial Circuit in and for Polk County, Case Number: 2016CA001716000000.  Due to the filing of the instant bankruptcy petition, the foreclosure action has been stayed.

7.  The appraised value of the property is $136,349.00. See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

8.  Based upon the Debtor(s)' schedules, the property is claimed as non-exempt.  The Trustee has not abandoned the property.

9.  Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

10. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

11. Secured Creditor respectfully requests this Court grant it relief from the Automatic Stay in this case pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral. The value of the collateral is insufficient in and of itself to provide adequate protection

which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

12.    Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

13.    Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage.  Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

14.    A Proposed Order accompanies this Motion.  See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

**I HEREBY CERTIFY** that on August 17, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

FLORIDA LAW ADVISERS, P.A.
2202 N WEST SHORE BLVD
SUITE 200
TAMPA, FL  33607

THOMAS A. BELL
AKA THOMAS ALVIN BELL
167 WOOD HALL DR
MULBERRY, FL  33860

SALLIE K. BELL
AKA SALLIE KATE BELL
167 WOOD HALL DR
MULBERRY, FL  33860

BETH ANN SCHARRER
PO BOX 4550
SEMINOLE, FL  33775

UNITED STATES TRUSTEE - TPA7/13
TIMBERLAKE ANNEX, SUITE 1200
501 E POLK STREET
TAMPA, FL  33602

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909
By: /s/ Can Guner
Can Guner, Esquire
Florida Bar Number 20931
Email: cguner@rasmonitor.com

Loan Number:

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 17, 2007                        ATLANTA                    GEORGIA
   [Date]                            [City]                    [State]

        167 WOOD HALL DR, MULBERRY, FLORIDA 33860
                        [Property Address]

## 1.   BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 270,000.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is FOUNDATION FINANCIAL GROUP, LLC (CFL # 19101)
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      9.750 %.  The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS
(A)   Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the  1st      day of each month beginning on  JULY 1                .
2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JUNE 1, 2037            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  100 GALLERIA PKWY SUITE 1400, ATLANTA, GEORGIA 30339
                            or at a different place if required by the Note Holder.
(B)   Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,319.72        . This amount may change.
(C)   Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                    Form 3520 1/01
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family              DocMagic eForms 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                                              www.docmagic.com
For Use in FLORIDA Only                    Page 1 of 5

EXHIBIT A

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A)   Change Dates

The interest rate I will pay may change on the 1st    day of JUNE, 2009                          , and on that day every   6th      month thereafter.  Each date on which my interest rate could change is called a "Change Date."

(B)   The Index

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

(C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 000/1000                percentage points (          6.000  %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

(D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      11.250  % or less than     8.250      %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than   ONE AND 500/1000                     percentage point(s) (   1.500      %) from the rate of interest I have been paying for the preceding   6     months.  My interest rate will never be greater than     15.750      %.  My interest rate will never be less than 6.000 %.

(E)   Effective Date of Changes

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY   ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                    Page 2 of 5

Form 3520 1/01
*DocMagic* 800-649-1362
www.docmagic.com

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.000 % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX                                    Form 3520 1/01
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family               DocMagic *eForms* 800-649-1362
Fannie Mae MODIFIED INSTRUMENT                                                        www.docmagic.com
For Use in FLORIDA Only                                    Page 3 of 5

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                          Page 4 of 5

Form 3520 1/01
DocMagic *eFormss* 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Sallie Bell_____ (Seal)          _____ (Seal)
SALLIE BELL                   -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                   -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in FLORIDA Only                    Page 5 of 5

Form 3520 1/01
DocMagic eForms  800-649-1362
www.docmagic.com

Loan Number:

# ASSIGNMENT OF NOTE
# WITHOUT RECOURSE

For valuable consideration, receipt of which is hereby acknowledged, the undersigned hereby sells, transfers, endorses, assigns and delivers to:

Option One Mortgage Corp.

All of his rights, title, and interest in and to the attached promissory note dated: MAY 17, 2007
in the face amount of   $ 270,000.00                    . The borrowers in said promissory note are:
SALLIE BELL

Said promissory note is secured by a security instrument of the same date on real property located at:
167 WOOD HALL DR, MULBERRY, FLORIDA 33860

FOUNDATION FINANCIAL GROUP, LLC

(Beneficiary)

transfers all rights accrued or to accrue under said note and securing security instrument in which the undersigned is the Beneficiary and borrowers are trustors.

Dated: 5-17-07

BENEFICIARY:
FOUNDATION FINANCIAL GROUP, LLC

By: _____
Name and Title

Paul Slott, Managing Partner

ASSIGNMENT OF NOTE WITHOUT RECOURSE

# ALLONGE TO NOTE
## (CORONE LENDER)

This allonge makes reference to the following Note:

Loan Number:
Servicing Number:
Date: MAY 17, 2007
Note Date: MAY 17, 2007
Loan Amount: $270,000.00
Borrowers: SALLIE BELL

Property Address: 167 WOOD HALL DR, MULBERRY, FLORIDA 33860

Therefore, in reference to the captioned Note, the following applies:

Pay to the order of:   OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA
                       CORPORATION, 3 ADA, IRVINE, CA 92618

                                             Without Recourse

FOUNDATION FINANCIAL GROUP,
LLC
By: _____

_____
Authorized Signer's Name

Paul Scott
_____
Print Signer's Name

Managing Partner
_____
Print Signer's Title

Loan Number:                     Servicing Number:                     Date: 05/17/07

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:


Borrowers:  SALLIE  BELL


Loan #:
Property Address:  167  WOOD HALL DR,   MULBERRY, FL 33860-8522
Loan Amount:  $270,000.00



Note Date:  05/17/07



Therefore, in reference to the captioned note, the following applies:



Pay to the order of:

                                                          Without Recourse




Option One Mortgage Corporation
A California Corporation


By: _____
    ~~Tracey Caracciolo~~     Robert Salazar

    Assistant Secretary




USD3050.wp (03-29-07)

INSTR # 2007117342
BK 07308 PGS 1772-1790 PG(s)19
RECORDED 06/04/2007 11:35:44 AM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
MTG DOC 945.00
INTANG TAX 540.00
RECORDING FEES 163.00
RECORDED BY L Withem

Record & Return to:
TrustCorp Title Services
7651-A Ashley Park Court, ste. 403
Orlando, Fl 32835

PREPARED BY: LISA RAUSCH

FOUNDATION FINANCIAL GROUP
100 GALLERIA PKWY SUITE 1400
ATLANTA, GEORGIA 30339

——————— [Space Above This Line For Recording Data] ———————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MAY 17, 2007                 , together with all Riders to this document.
(B) "Borrower" is  SALLIE BELL AND THOMAS BELL, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is  FOUNDATION FINANCIAL GROUP

Lender is a  LLC                                                             organized and existing under the laws of  GEORGIA
Lender's address is  100 GALLERIA PKWY SUITE 1400, ATLANTA, GEORGIA 30339

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated  MAY 17, 2007             .
The Note states that Borrower owes Lender  TWO HUNDRED SEVENTY THOUSAND AND 00/100                                              Dollars (U.S. $  270,000.00             )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JUNE 1, 2037             .
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

DocMagic eForms 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

(G)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

(H)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K)  "Escrow Items" means those items that are described in Section 3.

(L)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the

| COUNTY | of | POLK | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES
A.P.N.: 262923-141950-000280

which currently has the address of  167 WOOD HALL DR

[Street]

| MULBERRY | , Florida | 33860 | ("Property Address"): |
|---|---|---|---|
| [City] | | [Zip Code] | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

DocMagic *eFormns* 800-649-1362
*www.docmagic.com*

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01
Page 4 of 15

DocMagic *eForms* 800 849-1362
www.docmagic.com
A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

Book7308/Page1775   CFN#2007117342   Page 4 of 19

9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender

---

DocMagic *eFormica* 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument; including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

---

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                                   Page 7 of 15

*DocMagic* eRorms 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

    Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

    Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

    As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

    (a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

    (b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the

---

DocMagic *Riemas* 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

---

*DocMagic* €Forms 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall

---

*DocMagic* 800-849-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

DocMagic *Forms* 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Sallie Bell_ (Seal)
_____ -Borrower
SALLIE BELL
167 WOOD HALL DR, MULBERRY,
FLORIDA 33860

_Thomas Bell_ (Seal)
_____ -Borrower
THOMAS BELL
167 WOOD HALL DR, MULBERRY,
FLORIDA 33860

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Signed, sealed and delivered in the presence of:

_Evelyn E Mizell_
_____
Evelyn E Mizell

_Rhonda Lowe_
_____
Rhonda Lowe

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3010 1/01                          Page 14 of 15

DocMagic €Ferms 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF FLORIDA

COUNTY OF ___Polk___

The foregoing instrument was acknowledged before me this _17_ day of _May 2007_

by __SALLIE BELL, THOMAS BELL__

_____

_____

who is personally known to me or who has produced _drivers license_

(Type of Identification)

as identification.

Evelyn E. Mizell
Commission #DD398092
Expires: Apr 03, 2009
Bonded Thru
Atlantic Bonding Co., Inc.

(Seal)

_Evelyn E. Mizell_
Signature

_Evelyn E. Mizell_
Name of Notary

_Notary_
Title

_____
Serial Number, if any

DocMagic *eForms* 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 17th day of MAY, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to FOUNDATION FINANCIAL GROUP, LLC

("Lender") of the same date and covering the property described in the Security Instrument and located at:

167 WOOD HALL DR, MULBERRY, FLORIDA 33860

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      10.350 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A)  Change Dates
The interest rate I will pay may change on the 1st day of JUNE, 2009 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

---

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                           Page 1 of 3

DocMagic *eForms*  800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

(C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 000/1000 percentage points ( 6.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.850 % or less than 8.850 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000 percentage points ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.350 %. My interest rate will never be less than 6.000 %.

(E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 2 of 3

*DocMagic* ℰℱ⟩⟨⟩⟩⟩ 800-649-1362
*www.docmagic.com*

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURT

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Sallie Bell_ (Seal)
SALLIE BELL            -Borrower

_Thomas Bell_ (Seal)
THOMAS BELL            -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                          Page 3 of 3

DocMagic *CRecords* 800-649-1362
www.docmagic.com

A TRUE COPY
CERTIFICATION ON LAST PAGE
RICHARD M. WEISS, CLERK OF COURTS

# EXHIBIT "A"
## LEGAL DESCRIPTION

Lot 28 of Imperialakes, Phase Two, according to the Plat thereof, recorded in Plat Book 64, Page 1, of the Public Records of Polk County, Florida.

A/K/A:  167 Wood Hall Dr, Mulberry, FL  33860
Date Acquired:  8/27/1997



STATE OF FLORIDA, COUNTY OF POLK
This is to certify that the foregoing is a true
and correct copy of the document now of
record in this office. Witness my hand and
Official Seal on _November 2, 2007_
☑ This copy has no redactions.
☐ This copy has been redacted pursuant to law.
RICHARD M. WEISS, CLERK CIRCUIT COURT
BY _Carol D. Villancourt_ D.C.

9

INSTR # 2008064150
BK 07604 PGS 1266-1267 PG(s)2
RECORDED 04/14/2008 02:52:25 PM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
RECORDING FEES 18.50
RECORDED BY V Nace



*Prepared by:* Option One Mortgage Corp.
*& When Recorded Return to:* Assn Dept.
American Document Services, Inc.
250 Commerce 2nd Floor          0
Irvine, CA 92602    PROJECT 632
(888)477-4780

Order No.
Escrow No.
Loan No.

——— SPACE ABOVE THIS LINE FOR RECORDER'S USE ———

## Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
OPTION ONE MORTGAGE CORPORATION, A CALIFORNIA CORPORATION

whose mailing address is   3 ADA, IRVINE, CA 92618

all of the undersigned's right, title and interest in, to and under that certain Mortgage dated
MAY 17, 2007          executed by   SALLIE BELL AND THOMAS BELL,
WIFE AND HUSBAND

, as mortgagor,
to   FOUNDATION FINANCIAL GROUP, LLC (CFL # 19101)
, as mortgagee,
and recorded either

☐ concurrently herewith; or
☒ as Instrument No. 2007 117342 on 6-04-2007          in book 07308 ,
page 1772      , in the Official Records in the County Recorder's office of

FLORIDA
, describing land therein as:
~~SEE EXHIBIT A ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES~~
~~A.P.N.: 262~~923-141950-000280          POLK   County,

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Mortgage. The original principal amount due under
this note(s) is $   270,000.00          .

---

FLORIDA ASSIGNMENT OF MORTGAGE/CORPORATION OR PARTNERSHIP
04/05/06                              Page 1 of 2

DocMagic *eForms* 800-649-1362
*www.docmagic.com*

Signed, sealed and delivered in the presence of:
Witnesses:

*Audre A. McDonald*

FOUNDATION FINANCIAL GROUP

*Paul Stott,*
*Managing partner*

STATE OF FLORIDA )
) SS.
COUNTY OF POLK )

The foregoing instrument was acknowledged before me this ____ day of *May 2007* by *Paul Stott* as *Managing partner* for FOUNDATION FINANCIAL GROUP .

Signature _____

*Haydee Munoz*
(Print, Type or Stamp Commissioned Name of Notary Public)

Personally known _____✔_____ or
Produced Identification _____
Type of Identification Produced: _____

My Commission expires: *02-09-08*

(Seal)

This instrument prepared by:

(Affix Notarial Seal)

HAYDEE MUNOZ
NOTARY
PUBLIC
EXPIRES FEBRUARY 09, 2008
COBB COUNTY, GEORGIA

DocMagic *eForms* 800-649-1362
www.docmagic.com

# AHMSI

AMERICAN HOME MORTGAGE INC

*Servicing*
at a higher power

October 20, 2008

American Home Mortgage

NOV 1 0 2008

RECEIVED

Sallie Bell
167 Wood Hall Dr
Mulberry, FL 33860

Re: Loan No.

## **** URGENT MESSAGE – TIME SENSITIVE – REQUIRES IMMEDIATE ATTENTION – THIS COULD SAVE YOUR HOME FROM FORECLOSURE! ****

*American Home Mortgage Servicing (AHMSI) knows that these are difficult times and we are here to help you. Our records show that your account is delinquent or perhaps already in foreclosure. We have developed a special program that will ease your payment burden over the next few years and will assist you in keeping your home through this difficult period. Please read the following information carefully and respond to us as quickly as possible. This is a limited time offer and requires your immediate attention.*

Dear Sallie Bell :

As you are aware, the above referenced loan is seriously delinquent and may be in foreclosure. Because we do not want you to lose your home, we are pleased to advise that you are eligible for a 60-month loan modification that will allow us to **bring your loan current**, suspend your loan from foreclosure, if applicable, and make your monthly payments more affordable.

Contingent on you executing the enclosed Loan Modification Agreement and returning it, along with the required down payment, by November 14, 2008, to the address and in the amount as indicated in the agreement, we will modify the terms of your loan documents in accordance with the following:

1) The amount of your arrearage (which includes but is not limited to accrued and unpaid interest, accrued late charges, and advances made by us for your tax and insurance payments, attorneys' fees and costs, property inspections, etc.) will be added to your loan balance, **bringing your loan current**.
2) Your monthly payments will be interest only payments at a fixed rate of 5% for a period of 60 months, beginning with your October 1, 2008 payment. Your October 2008 payment as modified (your down payment) will be due at signing, and your subsequent modified monthly payments will begin on November 1, 2008.

9

Name: BELL  SALLIE
Customer: GCMI

Location: SLC

3) After the expiration of the 60 month period, you will be required to make principal and interest payments at the interest rate specified in your loan documents so that, in general, the unpaid loan balance is fully amortized over the remaining term of your loan.
4) There will be no fees assessed to complete this loan modification.

As a further inducement to you to accept this offer, if you return your down payment and agreement, signed as indicated above, for our receipt on or before October 29, 2008, we will send you a VISA gift card (or its equivalent) in the amount of $250.00, by November 30, 2008.

We must receive the following:

1) Your down payment, in the form of a cashier's check, certified funds, Western Union Quick Collect, Money Gram or money order.
2) The Loan Modification Agreement, signed by all borrowers (and any non-borrower mortgagors).
3) All four pages of the Loan Modification Agreement (with the initials of all signatory parties at the bottom of the all pages) along with Schedule A (with the initials of all signatory parties at the bottom) must be returned.

We have provided a self-addressed, prepaid express delivery envelope for your convenience. Also provided for your convenience are two originals of the Loan Modification Agreement so you can retain one for your records.

If you have any questions regarding this important opportunity, please contact us at your earliest convenience at (877) 314-6900. Our office hours are Monday through Thursday, 7:00 a.m. to 9:00 p.m., Friday, 7:00 a.m. to 4:00 p.m. and Saturday, 7:00 a.m. to 11:00 a.m., Central Time.

Sincerely,
American Home Mortgage Servicing, Inc.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR, BUT IT DOES NOT IMPLY THAT AMERICAN HOME MORTGAGE SERVICING, INC. IS ATTEMPTING TO COLLECT MONEY FROM ANYONE WHOSE DEBT HAS BEEN DISCHARGED PURSUANT TO (OR IS UNDER THE PROTECTION OF) THE BANKRUPTCY LAWS OF THE UNITED STATES; IN SUCH INSTANCES, IT IS INTENDED SOLELY FOR INFORMATIONAL PURPOSES.

**Loan #**

# LOAN MODIFICATION AGREEMENT
### (Providing for 60 Month Interest Only Payment)

This Loan Modification Agreement (this "Agreement"), made as of the 1st day of October 2008, (the "Effective Date") between <u>Sallie Bell</u>  (collectively, "Borrower") and American Home Mortgage Servicing, Inc., as servicer, ("Loan Servicer"), modifies (1) the mortgage, deed of trust, or security deed (the "Security Instrument") dated <u>May 22, 2007</u> and (2) the promissory note (the "Note"), bearing the same date as, and secured by, the Security Instrument (Borrower's obligation under the Note, Security Instrument and this Agreement hereinafter referred to as the "Loan"), which Security Instrument covers the real and personal property located at <u>167 Wood Hall Dr, Mulberry, FL, 33860,</u>

(Property Address)

more fully described in the Security Instrument and defined therein as the "Property." All capitalized terms in this Agreement shall have the same meanings as set forth in the Note and Security Instrument, unless defined in this Agreement; all schedules and exhibits attached to this Agreement are incorporated into and made part of this Agreement; and all references to this Agreement include the schedules and exhibits.

In consideration of the mutual promises and agreements exchanged, Loan Servicer and Borrower agree that the Note and Security Instrument shall be modified hereby as follows:

1.  As of the Effective Date, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. <u>$278,075.51,</u> consisting of the unpaid amount(s) loaned to Borrower by Lender plus any accrued and unpaid interest and other amounts capitalized as set forth in Schedule "A," attached hereto and made a part hereof.

2.  Borrower promises to pay the New Principal Balance, plus interest, to the order of Loan Servicer.  Interest will be charged on the New Principal Balance at the yearly rate of 5.00% (the "Mod Rate") for the sixty (60) month period from September 1, 2008, up to and including August 31, 2013 (the "Interest Only Period"), at which time the interest rate shall revert to the rate as set forth in the Note (the "Note Rate"), as further provided below.  If the Note is a fixed rate note, the Note Rate shall be the rate set forth in the Note from the expiration of the Interest Only Period until all sums evidenced by the Note are paid in full.  If the Note is an adjustable rate note, the Note Rate shall be the rate that is scheduled to go into effect on the Change Date next following the end of the Interest Only Period, calculated as if this Agreement had never existed and as thereafter adjusted (all in accordance with the provisions of the Note); however, notwithstanding the foregoing, the Mod Rate shall continue in effect from the expiration of the Interest Only Period until said Change Date (such period, the "Transition Period").  Borrower will make a payment every month.  The monthly payment during the Interest Only Period and the Transition Period, as applicable, will consist of interest only at the Mod Rate and will be in the amount of U.S. <u>$1,158.65</u> (the "Interest Only Payment") plus any amounts for taxes and insurance as set fourth in Schedule "A"; provided, that the one Interest Only Payment due for October 1, 2008 is made in a lump sum upon execution of this Agreement (the "Mod Start Payment"). **AS MORE PARTICULARLY SET FORTH IN PARAGRAPH 7, THIS AGREEMENT SHALL BE VOID AND NOT TAKE EFFECT UNLESS THE MOD START PAYMENT IN THE FORM OF A CASHIER'S CHECK OR CERTIFIED FUNDS, AND THIS AGREEMENT, ARE RECEIVED ON OR BEFORE NOVEMBER 14, 2008.**

After the Mod Start Payment is made, the next due Interest Only Payment will be due November, 1, 2008. Beginning on (a) October 1, 2013, with respect to a Note that is a fixed rate note, and (b) the first day of the month following the expiration of the Transition Period, with respect to a Note that is an adjustable rate

Borrower initials here:

Note, and in either case continuing thereafter on the same day of each succeeding month until the New Principal Balance and interest are paid in full (the "Amortizing Period"), the monthly payment will consist of principal and interest at the Note Rate in an amount necessary to amortize the New Principal Balance, as then in effect, over the remaining term of the Loan. Loan Servicer will notify Borrower of the amount of the new monthly payment prior to the beginning of the Amortizing Period. If on June 01, 2037 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.   Borrower will comply with all covenants, agreements, and requirements of Note and Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are canceled, null and void, during the Interest Only Period and the Transition Period, as applicable:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b)   all terms and provisions of any adjustable rate rider, or other instrument or document (if any) that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

4.   Borrower understands, acknowledges and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Note and Security Instrument shall also apply to default in the making of the modified payments under this Agreement.

   (b)   Except as herein modified, all covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect and none of Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Loan Servicer's or Note Holder's rights or remedies under the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Loan Servicer and Note Holder are presently entitled against the Property, Borrower, any other property or any other persons in any way obligated for, or liable on, the Note and Security Instrument, are expressly reserved by Loan Servicer and Note Holder.

   (c)   Borrower has no right of set-off or counterclaim against Note Holder or Loan Servicer, or any defense to the obligations of the Note or Security Instrument.

   (d)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (e)   In addition to and simultaneously with Borrower's monthly payments as set forth in paragraph 2 above, Borrower shall be required pay to Loan Servicer, until such time as the New Principal Balance and interest are paid in full, a sum to provide for payment of amounts due for (i) yearly taxes and assessments which may attain priority over the Security Instrument as a lien on the Property, and (ii) yearly hazard or property insurance premiums, all in accordance with the terms and conditions of the Security Instrument. A waiver of this requirement by Loan Servicer shall not constitute a waiver of such requirement at any future date, and Loan Servicer specifically reserves the right, in its sole and absolute discretion, to impose such requirement at any time upon written notice to Borrower.

   (f)   Borrower shall make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

LOAN MODIFICATION AGREEMENT (60 Month Interest Only)—Single Family—AHMSI Instrument      Form MODC07AL10 (10/17/08)      *(page 2)*

Borrower initials here:

5.  Borrower and Loan Servicer understand, acknowledge and agree that:

    (a)  If foreclosure proceedings have been commenced with respect to the Loan, upon payment of the Mod Start Payment and Loan Servicer's receipt of this Agreement, fully executed, Loan Servicer shall forbear from taking any further action in connection with any such foreclosure proceeding. **In consideration of Loan Servicer's forbearance, Borrower hereby expressly waives the right to challenge or contest the foreclosure process initiated by Loan Servicer, Loan Servicer's attorney and/or the foreclosure trustee, including all acts or omissions prior to or subsequent to this Agreement.** Borrower admits and recognizes that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of Borrower and Loan Servicer and that to the extent allowed by applicable law the foreclosure sale may be postponed from time to time until the loan is fully reinstated or the foreclosure sale is consummated.

    (b)  Time is of the essence of this Agreement, in particular the receipt by Loan Servicer of this Agreement (fully executed by Borrower and any Non-Obligor Mortgagors) and the Mod Start Payment. **There are no grace periods with respect to the Interest Only Payment due under this Agreement, and failure to make timely payments as specified in paragraph 2 constitutes a breach of the terms of this Agreement. Notwithstanding the above, late charges as specified in the Loan Documents will continue to accrue as allowed by applicable law.**

    (c)  If Borrower fails to make any of the payments specified in paragraph 2 on the due dates and in the amount stated, or otherwise fails to comply with each and all of the terms and conditions herein, Loan Servicer, at its sole option, may terminate this Agreement without further notice to Borrower. In such case, all amounts that are owing under the Note and Security Instrument, as amended by this Agreement, shall become immediately due and payable, and Loan Servicer shall be permitted to exercise any and all rights and remedies provided for in the Loan Documents, including, but not limited to, immediate commencement of a foreclosure action without further notice to Borrower, and/or resumption of a pending foreclosure action without further notice to Borrower, and/or conducting a pending foreclosure sale without further notice to Borrower.

    (d)  Loan Servicer represents that it has the authority to enter into this Agreement on behalf of the Note Holder.

    (e)  The terms, clauses, conditions and provisions of this Agreement are binding upon and shall inure to the benefit of all assignees, successors-in-interest, personal representatives, estates, administrators, heirs, devisees, and legatees of each of the parties hereto.

    (f)  Except as is otherwise provided for herein, this Agreement along with the Note and Security Instrument constitutes the entire agreement between the parties with reference to the subject matter hereof, and supersedes any prior agreement, oral or written, with respect thereto; and, in entering into this Agreement, no party is relying upon any representation, warranty, agreement, or covenants not set forth herein.

    (g)  This Agreement may be signed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

6.  To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause, or sentence shall be modified or deleted in such a manner so as to make the Agreement, as so modified, legal and enforceable under applicable law, provided that should such modification or deletion materially diminish the benefit of this Agreement to any of Loan Servicer, Note Holder or Borrower, the Agreement shall be of no force or effect and the relationship of Loan Servicer, Note Holder and Borrower shall be entirely governed by the provisions of the Note and Security Instrument.

7.  This Agreement shall be of no force or effect, and no action will be taken by Loan Servicer to cease

LOAN MODIFICATION AGREEMENT (60 Month Interest Only)—Single Family—AHMSI Instrument          Form MODC07AL10 (10/17/08)      *(page 3)*

Borrower initials here: _____   _____   _____   _____

collection and foreclosure activities relating to the Loan, unless and until Loan Servicer has received this Agreement, fully executed and initialed by Borrower and any Non-Obligor Mortgagors, along with the Mod Start Payment in the form of a cashier's check or certified funds, no later than November 14, 2008. This Agreement is not considered "received" by Loan Servicer unless and until it has been delivered to Loan Servicer at 4650 Regent Blvd., Suite 100, Irving, TX 75063, and internally date stamped. Furthermore, this Agreement shall be of no force or effect if Borrower files a bankruptcy petition prior to Loan Servicer's receipt of this Agreement.

IN WITNESS WHEREOF, the undersigned have set their hands hereunto as of the date written below.

American Home Mortgage Servicing, Inc.

By: _____

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower


## NON-OBLIGOR MORTGAGORS

For purposes of this Agreement, the undersigned are not Borrowers; they are "Non-Obligor Mortgagors" (that is, this term is defined to mean (i) signatories on the Security Instrument but not obligated on the Note or (ii) persons not obligated on the Note but added to title on the Property after the origination of the above-referenced Loan). By his/her/their signature(s) below on this Agreement, the undersigned Non-Obligor Mortgagors acknowledge and agree (x) that his/her/their interest in the Property was subject to the Security Instrument and remains subject to the Security Instrument as modified by this Agreement, and (y) that he/she/they are bound by all of the terms and conditions of this Agreement, except to the extent that such terms and conditions pertain to any promise or obligation to pay Loan Servicer or Note Holder any amount.

Acknowledged and agreed to: _____    Date: 11/7/08
                            Non-Obligor Mortgagor

Acknowledged and agreed to: _____    Date: _____
                            Non-Obligor Mortgagor


LOAN MODIFICATION AGREEMENT (60 Month Interest Only)—Single Family—AHMSI Instrument    Form MODC07AL10 (10/17/08)    *(page 4)*

Borrower initials here: _____  _____  _____  _____

# Loan Modification Agreement
## Schedule A

Name of Borrower(s):
Sallie Bell

Loan Number:

| DESCRIPTION OF TOTAL AMOUNT DUE | TOTAL DUE |
|---|---|
| **Current Principal Balance** | $268,556.64 |
| Plus Delinquent Interest Through 08/31/2008: | $8,716.81 |
| Plus Advances Made for Attorneys' Fees/Costs/Inspections | $328.50 |
| Plus Escrow (tax and insurance) Shortage (including escrow advances if applicable) | $0.00 |
| Plus Unpaid Late Charges | $463.96 |
| Plus Non-Sufficient Funds (returned check fees) | $9.60 |
| Less Suspense Balance (funds held that will reduce amount owed) | $0.00 |
| **New Principal Balance** | $278,075.51 |

| New Mod Payment Amount Effective for the Payments Due 10/01/2008 Through 09/01/2013*: | |
|---|---|
| Interest Only | $1,158.65 |
| Monthly Escrow Payment (for Taxes and Insurance)** | 0 |
| **Total Payment Applicable During Mod or Interest Only Period**** | $1,158.65 |

\*  If your loan is an ARM, this mod payment amount will be in effect through the payment due on the first Change Date that occurs after 08/31/2013.

\*\* Includes estimated amount for the monthly escrow payment (which is subject to change).

Borrowers' Initials _SB_  _JP_  _____  _____

303111401 NEW 03/08 8810013776

## OFFICIAL CHECK

 **WaMu**

62-20/311   **2269601577**

MATCH THE AMOUNT IN WORDS WITH THE AMOUNT IN NUMBERS

WASHINGTON MUTUAL   **1158.65**
ONE [ONE] FIVE [EIGHT] CTS CTS

*Nov 8, 2008 ONE THOUSAND ONE HUNDRED FIFTY EIGHT DOLLARS AND 65 CENTS *

Pay to
the          AHMSI
order
of:

DRAWER: Washington Mutual Bank

AUTHORIZED SIGNATURE

REMITTER
THOMAS ALVIN BELL                                         8930 105

Security
Features
Details on
Back

Citibank, N.A. - One Penn's Way - New Castle DE 19720

⑈2269601577⑈  ⑈031100209⑈      38769931⑈

| Parcel ID:232926141950000280 |
| --- |
| Owner:  BELL THOMAS |

Mailing Address

167 WOOD HALL DR
MULBERRY FL 33860-8522

Site Address
167 WOOD HALL DR
MULBERRY FL 33860

### Value Information

| | |
| --- | --- |
| Land Value: | $29,000.00 |
| Building Value: | $107,349.00 |
| Misc. Item(s) Value: | $0.00 |
| Total Just Value (Market): | $136,349.00 |

### Exemption Information
Addt'l Homestead does not apply to all tax districts

| | |
| --- | --- |
| Homestead: | $25,000.00 |
| Addtl. Homestead: | $25,000.00 |
| Widow/er: | $0.00 |
| Disability: | $0.00 |
| Senior: | $0.00 |
| Veteran: | $0.00 |
| Other: | $0.00 |

### Non Ad-Valorem Assessments

| | |
| --- | --- |
| Fire: | $195.00 |
| Other: | $198.80 |

### General Property Information

| | |
| --- | --- |
| Neighborhood # | 410430.00 |
| Subdivision # | 141950 |
| Subdivision Name | IMPERIALAKES PHASE TWO |
| DOR Use Code (DOR) | 0100 |
| DOR Description | SFR up to 2.49 AC |
| Short Legal: | |
| IMPERIALAKES PHASE TWO PB 64 PG 1 LOT 28 | |

### Taxable Value (Tax Dist: 90000)

| District Description | Tax Rate | Assessed Value | Assessed Taxes | Exemption | Tax Savings | Taxable Value | Taxes |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BOARD OF COUNTY COMMISSIONERS | 6.781500 | $121,540.00 | $824.22 | $50,000.00 | $339.08 | $71,540.00 | $485.15 |
| POLK COUNTY PARKS MSTU | 0.561900 | $121,540.00 | $68.29 | $50,000.00 | $28.10 | $71,540.00 | $40.20 |
| POLK COUNTY LIBRARY MSTU | 0.210900 | $121,540.00 | $25.63 | $50,000.00 | $10.55 | $71,540.00 | $15.09 |
| POLK COUNTY STORMWATER MSTU | 0.100000 | $121,540.00 | $12.15 | $50,000.00 | $5.00 | $71,540.00 | $7.15 |
| POLK COUNTY SCHOOL BOARD - STATE | 4.549000 | $121,540.00 | $552.89 | $25,000.00 | $113.73 | $96,540.00 | $439.16 |
| POLK COUNTY SCHOOL BOARD - LOCAL | 2.248000 | $121,540.00 | $273.22 | $25,000.00 | $56.20 | $96,540.00 | $217.02 |
| SOUTHWEST FLA WATER MGMT DIST | 0.331700 | $121,540.00 | $40.31 | $50,000.00 | $16.59 | $71,540.00 | $23.73 |
| **Total** | **14.78300** | | **$1,796.71** | | **$569.25** | | **$1,227.50** |

### Sales Information

| | Grantee Name | Vac/Imp | Sale Date | Sale Amount | OR Book | OR Page | Deed Type | Multi-Parcel Sale |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | | I | 01-Aug-1997 | $138,000.00 | 3903 | 35 | W | 00 |
| 2 | | I | 01-Dec-1988 | $120,000.00 | 2694 | 88 | W | 00 |
| 3 | | E | 01-Jul-1978 | $13,500.00 | 1821 | 1855 | W | 00 |

### Land Information

| Description | Ag/GreenBelt | Land Unit Type | Front | Depth | Units |
| --- | --- | --- | --- | --- | --- |
| Residential | N | U | 141 | 150 | 1 |

### Sketch



| | | |
| --- | --- | --- |
| BAS | 2,349 | BASE AREA |
| USP | 361 | USP  UNFIN. SCREEN PORCH 40% |
| UGR | 575 | UGR  UNFINISHED GARAGE 50% |
| UOP | 48 | UOP  UNFIN. OPEN PORCH 30% |

### Residential Building Information

| | | | |
| --- | --- | --- | --- |
| Year Built: | 1978 | Stories: | 1 |
| Eff Yr Built: | 1978 | Bedrooms: | 3 |
| Description: | Single Family | Full Baths: | 3 |
| Units: | | Half Baths: | 0 |
| Total Under Roof: | 3,333 | Fireplaces: | 1 |
| | | Living Area (SFLA): | 2,349 |

### Miscellaneous Item(s) Information

| Description | Yr Blt | Eff Yr Blt | Length | Width | Units |
| --- | --- | --- | --- | --- | --- |

EXHIBIT B

Please Note:  All Value Information is from  2016 Proposed tax roll.  All taxes and tax rates are 2016.  Historic and economic exceptions are not reflected in these totals.  The information provided is believed to be correct but is subject to change and is not guaranteed.  If multiple structures exist on a parcel, only the first is shown.          **Additional lines of information pertaining to this record are not displayed due to field size limitation of this report

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

**IN RE:**                                                                                    **CASE NO.: 8:16-bk-04709-CPM**
                                                                                                                        **CHAPTER 7**

**Thomas A. Bell**
**aka Thomas Alvin Bell,**

    **Debtor,**

**Sallie K. Bell**
**aka Sallie Kate Bell,**

    **Joint Debtor.**

_____/

**<u>PROPOSED ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

      THIS CASE came on consideration without a hearing on WELLS FARGO BANK, NATIONAL

ASSOCIATION AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2007-OPT3, ASSET-

BACKED CERTIFICATES, SERIES 2007-OPT3's ("Secured Creditor") Motion for Relief from Stay

(Docket No. 00).  No appropriate response has been filed in accordance with Local Rule 2002-4.

Accordingly, it is:

16-173295 - CaC                                                                    <span style="color:red">Exhibit "C"</span>

**ORDERED**:

1.     Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2.     The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured  Creditor's

interest in the following property located at 167 WOOD HALL DR, MULBERRY, FL 33860

in Polk County, Florida, and legally described as:

LOT 28 OF IMPERIALAKES, PHASE TWO, ACCORDING TO THE PLAT THEREOF,
RECORDED IN PIAL BOOK 64, PAGE 1, OF THE PUBLIC RECORDS OF POLK
COUNTY, FLORIDA

3.     The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured

Creditor to exercise any and all *in rem* remedies against the property described above.

Secured Creditor shall not seek an in *personam* judgment against Debtor(s).

4.     Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or

written correspondence in order to discuss the possibility of a forbearance agreement, loan

modification, refinance agreement or loan workout/loss mitigation agreement.

5.     The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy Rule

4001(a)(3) is granted.

6.     Attorneys' fees in the amount of  - $199.00; and costs in the amount of $176.00 are awarded

for the prosecution of this Motion for Relief from Stay, but are not recoverable from the

Debtor(s) or the Debtor(s)' Bankruptcy estate.


                                        ###

Attorney, Frank Gomez, is directed to serve a copy of this order on interested parties and file a proof of
service within 3 days of entry of the order.